Arguments not to exceed 15 minutes per side Mr. Sasse for the appellant. Good morning. My name is Ben Sasse and I represent Appellant NBCO Inc. I'd like to reserve three minutes for rebuttal. This appeal addresses whether the City of Lebanon may back-bill NBCO over $1.2 million for electric service undercharges caused by the City's errors. The parties agree no provision in the Lebanon Code of Ordinances authorizes the City to take this step. The District Court erred in looking beyond the Code to fashion... Is there a provision in the Ordinance that prohibits them from doing it? You say it doesn't allow them to do it or doesn't authorize them, but is there anything in the Ordinance or the statutes that prohibit them from collecting it? There is no express prohibition, Your Honor, but the way I would ask that you think about that issue is to look at Section 910.04 of the Ordinances. And it appears on page ID record number 9. That Ordinance deals with computing the reading. And it first places the duty on the City to compute the proper charge to be billed to the customer. And it then authorizes two and only two exceptions under which the City may go back and make bill adjustments. The first has to do with meter malfunctions, and everyone agrees there's no meter malfunction here. The second has to do with an unauthorized taking of service, and that refers to theft, which also did not happen here. But if you look at the last sentence, and particularly the first clause in the sentence, what it says is if the meter readings are not indicative of the consumer's actual usage of product or service. Now up to that point, we have exactly what's happened here. And if the last sentence of the code stopped there, inserted a comma, and said the City may collect, then we wouldn't have a case. But the sentence doesn't stop there. It says due to unauthorized taking of service. So the code imposes a condition, a clear and unambiguous condition, on when the City can go back if the meter readings are not indicative of actual usage, which is exactly the situation here. It imposes a condition and says you can only do that if there is theft. So to circle back to your question, I would say the code does not authorize it. And if this court were to authorize it, it would have to read that last clause, due to unauthorized taking of service, out of section 910.04. Okay. I mean, what if we just say the code does not cover this at all? It's totally silenced, so the code is out of the picture. I mean, isn't there really an equitable remedy here, based upon quantum merit or implied contract, that somebody who receives a reasonable value of a good and service is presumed to have to pay for the reasonable services and goods? And I mean, say we don't have the code, we don't have the statute. Why wouldn't we just go to the equitable remedy, equitable claim here, and say that it's only reasonable that you pay for the reasonable value? Two points on that, Your Honor. First, they have not raised an equitable claim here. This isn't equitable action. It's not. You brought action for an injunction and declaratory relief, which is inequity. We brought a declaratory relief claim. We did, Your Honor. They did not bring a counterclaim for recovery for quantum merit. There's no quantum merit action before the court. And secondly... But could there have been one? I don't think so, and this circles back to the comment I was making a minute ago. But our point is, this is a contract claim at bottom, and the terms of the contract are formed by the code of ordinances. And you can't go outside the code of ordinances in order to fashion a remedy for the city. The city is bound by the code it writes, and a court doesn't have power to interfere with that code to authorize the city, to give the city a recovery outside that context. You're just saying it's tough luck for the city. You don't owe them anything for all that. That's your position, right? That's our position. It's tough luck for the city in the sense that the city wrote its own code. We're bound by that code. The city is bound by the code, and it doesn't authorize relief. And the ordinance does say that the application for service once accepted becomes a contract. Correct. So, I mean, where I'm struggling here is you don't deny that there is a certain inequity involved here, that you got one heck of a lot of electricity that you never paid for, right? I'm not denying it from the city's perspective, yes, Your Honor. That's right. But I think—go ahead. So my concern is that even if there is that inequity, if there is a contract, then I'm not sure that there's any authority that says, well, we can fashion a quasi-contract, look to quantum narrow it, because the contract didn't work right. That's exactly our point, Your Honor. I mean, when you look at the promise the city made, the promise the city made was to pay bills lawfully due. And so the argument is you have to look at the code to see what lawfully due means. And as I was discussing with Judge Griffin a moment ago, lawfully due means the bills that the city— the charge for paying the bills the city computes with the proper charge to be billed to the customer. And the code—I think we would have a far more difficult position, quite frankly, if the code did not address circumstances under which the city could go back and readjust bills at all. But that's not the situation we are in. The city thought about this issue. It passed an ordinance. The ordinance says what circumstances it can go back and recompute the bills. And the simple fact is those don't apply here. And, in fact, the city recognized as much because it went back and it amended the ordinances after this incident to give itself the authority. And it was perfectly proper for the city to do that. Now, if you're asking from a global perspective how could this possibly make sense, the way it makes sense is the city wrote its ordinances to impose on itself a duty to compute the proper charge to the customer. That's in 910.04. It has a duty. It bound itself. It wrote the laws. It has a duty to compute the proper charge. And so what the city did in that ordinance is it said, well, there's two circumstances where we cannot fulfill this duty. One is we have a meter malfunction. We can't compute the proper charge in that circumstance because we don't know what an accurate meter would say. The second circumstance is, well, what if the end user does something? It could bypass the meter, tamper with the meter, and then we couldn't fulfill our duty. And so the city said, okay, in those two circumstances, we will authorize ourselves to go back and adjust the bills. But it ended there. It didn't take the next step and said, and by the way, if we make a mistake, we get to go back and recalculate the bills. And I think it's important to realize that this is in the context of, yes, this is a lot of money. Yes, this is a long period of time. But everyone recognizes that at some point and in some circumstances, there should be a cap on how long you can go back. Well, now there is a 12-month cap under the amended ordinance. There's a 12-month cap on residential users, exactly. It wouldn't apply if this were under it. It wouldn't apply to us. But Judge Griffin said under the amended ordinance. Have they capped it under the amended? Because they changed the ordinance to take care of this problem, right? Right. Did they cap it? Yes, and I want to make sure I respond accurately and completely because this gets a little complicated. So under the ordinance as it exists now, if you have a meter malfunction, the issue I was talking about before, there's a 12-month cap on that. No cap if there's a theft of service. Under the revised ordinance, there's a cap of 365 days if it's residential. No cap if it's non-residential. If we were talking about something governed by the Public Utilities Commission of Ohio, at the time this occurred, there would have been no cap on how far they could go back. But now there is a three-year cap on how far they can go back. Under the Public Utilities Commission. Right. If it was under the auspices of the Public Utilities Commission. It's not applicable to this. Exactly, Your Honor. It's not applicable. And the only reason I'm raising these different numbers is to point out why the city is bound by what it chose to write. There are different caps imposed at different times by different legislative bodies under different circumstances. And if the city wanted to authorize itself to collect this money, it could have written the law in a way that allowed it to do so, as it proved by changing its own laws after this incident occurred. The city also argues that, I guess, the Ohio Constitution allows them to recoup this because if they cannot recoup it, it violates the constitutional process against discrimination in rate-paying taxpayers for public utilities. That that somehow violates the Ohio Constitution. And that here, because you did not pay your fair share of the electricity that you received, the costs have to be spread around to all the other rate-payers that are in the city system. And by doing so, that unfairly discriminates against them because they didn't actually receive the service. So, I mean, how do you respond to that? It's a constitutional right here. I have two points, one legal and one factual. And first, if I may, Your Honor, I'm not sure that's exactly the city's argument. I think what the city says is there is dicta in a case or felt that says that you cannot discriminate. And I believe what our response to that was, well, that dicta could only apply if there were a constitutional violation and none has ever been alleged here. And I don't recall them ever responding to that and saying, yes, there's some sort of constitutional violation. So our position on constitutional law is there is a provision, it's Section 4 of Article 18 of the Ohio Constitution, that gives the municipalities plenary authority to operate public utilities and to pass laws however they wish that govern those utilities. And our position is unless they claim, which they have never in this case, that there is some other constitutional violation created by their own conduct, they can't alter what they wrote as their own laws. Now, the factual point is it's not true that they're simply passing 100 percent of the cost of their wholesale power onto the customers. I know they've said that, but if you look at the depositions, in particular the deposition of George Clements, the city manager, what you'll realize is he has been accruing a surplus. It's essentially retained earnings over the last 14 years. It's now at $14 million. So the city effectively is making a profit and keeping profits. And it's not a situation where this is all getting passed back to the customers. Nor for that matter has the city done any calculation as to which customer has paid what or will they be able to effectively give this money back were they to collect it now. This is dealing with historical collections that have already occurred. The city hasn't come forward with any complaints or anything of that process. And the point we're making is the city wrote the laws and they cannot recover under the laws they wrote. And if I could, I'd like to reserve the remainder of my time for rebuttal. Thanks. Good morning, and may it please the court. Joe Pickens on behalf of the city of Lebanon. NBCO's continued assertion that the code squarely addresses undercharges and billing errors is simply wrong or that the city contemplated the issue of a clerical mistake or a billing error. It's simply wrong. NBCO relies on section 910.04. What that section states is that in a situation where essentially a meter breaks or it malfunctions, the city may estimate usage, but it may only do so for a look-back period of up to 12 months. That is not the situation that we have here. There was no meter malfunction. There is no estimate of usage. To be clear, what we have here is a data entry error by the customer service representative into the computer software system. By your client. By my client, without question. It's not the responsible problem of NBCO. We have readily admitted that we made the mistake. We made the clerical mistake. Yes, Your Honor. It seems logical that you ought to be able to collect for what you provided, but it's not in the code, is it? There is no provision in the code that directly addresses this issue. That is correct. What's your best case that you can collect? Is there any case out there floating about? There are numerous cases out there. I would direct the court to the city of Akron v. Rogers Industry. Very similar situation where the court said the issue of collecting undercharges is not addressed. In that case, what the court did was went directly to the intent of the contract and said it's entirely reasonable that the parties intended that the consumer was going to pay for the electricity that it actually used. And that's exactly what the district court did in this case. The issue is not addressed in the code. It's not addressed in the content, contract. What was the intent of the contract? The intent of the contract was... The contract is ambiguous or not ambiguous? It's not ambiguous, is it? Certainly the issue is not addressed. The district court made a finding that there was ambiguity because the issue is not addressed. That the contract in the code is silent to the issue. Therefore... So silence shows it's ambiguous. At least that's what the court said. I believe that's the case. I believe that the court was absolutely correct in finding ambiguity in the contract and the code. And what cases, for instance, such as the city of Akron State, there was never a specific finding of ambiguity in that case. They just simply held it's not addressed. We're going to look to the intent of the parties. Isn't that the rule of contract construction, though, that you have to interpret the plain terms of the contract and it's only if there is an ambiguity can you look behind the plain terms and look to see extrinsic evidence as to intent or this or that? You have to find an ambiguity to begin, don't you? I believe that's in part true. Whether you define ambiguity as silence or failure to address the issue, whoever you want to define it, it wasn't addressed in this case. So are you saying that when you have a contract and it doesn't address X at all and later on it becomes clear to one side or the other that it sure would have been good to have X in there, that that creates an ambiguity? Because if that's what you're saying, then everything about which a contract is silent makes the contract ambiguous. I believe that's the case, Your Honor. There's been discussion in this case whether Ohio statutory construction principles apply, whether federal statutory construction principles apply. What Ohio courts interpreting Ohio law have stated, they've actually defined what it means to be, what an ambiguity is. And what NBCO would like the court to believe, and it cites the Dunbar case, is that an ambiguity can only exist if a statute is susceptible to one or more interpretation. Additional Ohio law defines what susceptible to one or more interpretation means. And those cases state that susceptible to more than one interpretation can mean that a statute is silent on an issue. A statute or a contract? We're talking about contractual interpretation here, are we not? I guess we have an ordinance, too, so I may be a little involved. I believe we're talking about both, Your Honor. First of all, we ought to be applying Ohio law, shouldn't we? Without question. Okay. But if the contract or statute is silent, and then we use extrinsic evidence to determine the intent of the party, then we're just rewriting the contract, aren't we? I mean, just making it up? I don't believe we're making it up. If the parties had thought about this, this is what they would have put in the contract. I mean, is that what you're asking us to do? I mean, here it's silent. The parties did not consider this kind of an undercharge. However, had they thought of it, this is what they likely would have contracted for. I mean, that's what you want us to rule on, right? Yes, Your Honor. And we can do that? Okay. We should do that? We should do that. I will say that every court that has looked at this issue has stated that every court in Ohio, every court in the Sixth Circuit, and in just about every other jurisdiction across the country has stated that a utility is not precluded from collecting undercharges based on a billing mistake. What's your best ... You say that in this circuit, what's the best case in the circuit, not the Ohio State Court? You're saying it's all clear. What's our best case from this court? Do you have one? City of Akron v. Rogers Industry, which I already referenced, is ... I thought that was in the Court of Appeals. That's a state ... Ohio. Oh. This court. You said this circuit's pretty clear. If we have a clear case, that's the one we want to follow. I apologize, Your Honor. What I meant to say, state courts in the Sixth Circuit, multiple cases in Ohio, multiple cases in Tennessee, in Kentucky, in Michigan, they all hold the same thing. Do they have an ordinance like this? In some of the cases, yes. Rogers was an unpublished opinion, was it not? That is correct, Your Honor. So it might bind what was the Ninth District Court of Appeals, but it didn't bind anybody outside that, probably, right? I think that's probably right. I'm a little bit confused. In Rogers, wasn't there an actual ... not a, you know, you give us an application and that becomes a contract that's set out in the ordinance, but wasn't there an actual contract in Rogers? There was a contract, Your Honor. In Rogers, the parties had an opportunity to do some back and forth. The district court here said that this was an arm's length transaction, and you're not accepting that. That what we had in this case was an arm's length transaction. This was an ordinance, an application for service, where there wasn't any bargaining that went on. I don't know that there was any bargaining. Certainly, there was an application. The application indicated that in the application, NIPCO certified that they agreed to pay all the amounts that were lawfully due. They paid as they got the bills, right? They did pay. You sent the bills. They paid the money. They paid every bill, both before the mistake by the city and after the mistake by the city. Frankly, I think that goes to the intent of the parties, the contract. Okay. Mr. Peckin, your claim is limited to the contract or ordinance here. Am I correct in that? Our claim is governed by the contract and the code of ordinances, correct. It's so limited. You don't have other claims, do you? No, Your Honor. Okay. You don't have an equitable claim under Ohio law. We have not asserted an equitable claim other than participating in the declaratory action, which is an equitable action. Your claim actually simply is the ordinance is silent, the court should fix the ordinance, and we should recover under the fixed ordinance, as the district court did. We're not claiming that the court should fix the ordinance. All we're saying is the ordinance as it existed doesn't address the situation of what happens when there's a billing mistake. It was a clerical mistake. So how do we fix that if we don't say the ordinance requires this? Other than if you filed an equitable claim. Well, you do exactly what the district court did and you look to the intent of the parties. And fix the ordinance. Not asking the court to rewrite the ordinance or just asking the court to... The ordinance is silent to this issue. You're asking the court to read the ordinance as if it said this. That is correct. Why isn't that rewriting it? Maybe I'm misinterpreting what you're asking. Because the ordinance is silent to the issue, we're asking the court to look to the intent of the contract. Look to legislative intent. Look to the overwhelming case law in Ohio and other states that state that a public utility can, is entitled to, and in fact has an obligation to its other citizens to collect for a billing mistake. That's what we were asking the court to look at, to say that we are not precluded from collecting these undercharges. I imagine if you had individual residents who were on that and you found that they should have been billed more, you'd send them a bill and they'd pay it because they don't have the means to hire a lawyer. But you've got a big payer here that's contesting it. Did it happen with individual residences the same way, or do you know? To our knowledge, a situation like this has never happened in the past. Our city manager testified in his 14 years as city manager. This is the first time that this situation has come about and a citizen has refused to pay for utility service that they actually used. The city doesn't dispute. But for which they were never billed. For which they were never billed, that's correct. And the effect, and this was touched on a little bit, of not being able to collect this $1.2 million from NIPCO for service they unquestionably use, they don't dispute that they use this service, is that it spreads that cost to the other citizens of the city of Lebanon. Or reduces the surplus. Well, there is a little bit of a misstatement. The Department of Electric does not retain a profit. It acts essentially as a co-op. Now there is a surplus that is retained to fund infrastructure problems, to respond to emergencies, whatever the case may be. The city needs a certain amount of funds there to address those types of issues. But at the end of the day, it's still coming out of the pocket of the other citizens. But you haven't had to increase rates to the other citizens because you discovered that you hadn't properly billed NIPCO. That's exactly what happened, Your Honor. So whatever the city spends for purchasing power and distributing that power to its citizens, it bills its citizens pro rata based on the class of rate payer that they're in. So it wouldn't go to anybody except the class of rate payer that NIPCO would be in? No, it would get spread to all of the citizens. Mr. Pickens, right now you have a judgment for $1.2 million against NIPCO. They say you're entitled to zero. I see that the matter did go to our mediation office for a while. Is there any value of sending it back to mediation at this point? Or is that not a realistic possibility? I don't think it's realistic, Your Honor. I always see the value in mediation, but I can tell you that it went nowhere two months ago when we did it. No prospect for a hold at this point. The one other point that I'd like to stress is that in this case, NIPCO has never alleged to hardship. They've never alleged that, oh gosh, having to pay this $1.2 million is going to cripple our business, it's going to impact our business in some way. Of course, that's not relevant to a contract claim. That might be to an equitable claim. That's correct, Your Honor. That's absolutely correct. Any further questions? I think we do not. Thank you, counsel. Thank you. Very briefly, Your Honor, I'd like to address the claim that there are all these cases around the country that authorize them to do exactly what they want to do here. If you parse through those cases, other than the Rogers case that this Court has already discussed extensively, what you'll find is they address equitable defenses in a context in which an ordinance or a filed regulation clearly allows the recovery that the city seeks here. In those contexts, of course, it's proper to consider equitable factors because you're considering whether a customer that would be in NIPCO's position could assert an equitable estoppel defense. But that's not the situation we have here. The situation we have here is governed by a clear and unambiguous ordinance that does not authorize the recovery the city seeks. Unless there are any further questions, thank you, Your Honor. Do you concur with the city's view that further attempts at mediation would be fruitless? We do, Your Honor. All right. Thank you. Thank you. The case will be submitted. Clerk, may I call the next case?